**SOLOW BUILDING COMPANY, LLC and Solovieff Realty Co., LLC, Plaintiffs,**

v.

**ATC ASSOCIATES INC. and Safeway Environmental Corp., Defendants.**

**Civil Action No. 01–CV–0612 (DGT).**

United States District Court, E.D. New York.

Nov. 28, 2001.

Alan B. Vickery, Boies, Schiller & Flexner LLP, New York City, Christopher M. Green, Boies, Schiller & Flexner LLP, Armonk, NY, for plaintiffs.

Richard Fama, Cozen & O'Connor, New York City, Ronald W. Zdrojeski, Dennis Kerrigan, Leboeuf, Lamb, Greene & Macrae, L.L.P., Hartford, CT, for defendants.

## MEMORANDUM AND ORDER

TRAGER, District Judge.

Plaintiffs Solow Building Company, LLC ("Solow") and Solovieff Realty Company, LLC brought this action pursuant to citizen-suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(1), and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, against ATC Associates, Inc. ("ATC") and Safeway Environmental Corp. ("Safeway") alleging violations of the Clean Air Act, 42 U.S.C. § 7401, and seeking a judgment declaring that defendants must indemnify plaintiffs for any damages or penalties arising out of defendants' misconduct. ATC now moves to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") contending that plaintiffs' claims were discharged in bankruptcy because they arose, if at all, prior to ATC's reorganization pursuant to Chapter 11 of the United States Bankruptcy Code. In the alternative, ATC moves to dismiss plaintiffs' complaint pursuant to Rule 12(b)(3) of the FRCP because of improper venue.

### Background

Under Rule 12(b)(6) of the FRCP, all factual allegations must be taken as true and construed favorably to the plaintiff. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). Accordingly, below are the relevant facts as plaintiffs allege them to be.

Solow is a leasehold owner and operator of an office building located at 9 West 57th Street, New York, New York. *See* Compl. ¶ 3. Solovieff is a fee owner of the land and building located at that address. *See id.* Morgan Guarantee Trust Company ("Morgan"), a leasee of floors 2 through 11 in plaintiffs' office building, hired ATC and Safeway to conduct asbestos-related abatement and monitoring work on the floors leased by Morgan. *See id.* ¶ 4. Defendants began renovations and related demolition without thoroughly inspecting the area for the presence of asbestos. *See id.* ¶ 13. Safeway, with the knowledge of ATC, attempted to create containment barriers by taping polyethylene sheeting directly to the asbestos fireproofing material. *See id.* ¶ 15. Subsequently, when the tape pulled away from the asbestos material, it pulled

with it dry asbestos material away from the beams and deck. *See id.* As a result, asbestos was released into the air outside of the containment area. *See id.* The last act by ATC that allegedly contributed to violations of the Clean Air Act as well as state and local laws took place on January 5, 1999. *See id.* In addition, plaintiffs allege that defendants engaged in continuous and systematic efforts to hide their violations. *See id.* ¶¶ 17–25.

On July 26, 1999 (the "Petition Date"), ATC filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York, seeking relief under Chapter 11 of the United States Bankruptcy Code. *See* ATC Memo. in Support at 2. By order dated July 30, 1999, the date of September 17, 1999 was fixed as the deadline for filing all claims against ATC. *See id.* By order dated March 31, 2000 (the "Confirmation Order"), the Bankruptcy Court confirmed ATC's Fourth Amended Joint Consolidated Plan of Reorganization (the "Plan"). *See id.* The effective date of the Plan was April 27, 2000. *See id.*

The Confirmation Order and the Plan enjoin the commencement or continuance of any lawsuit against ATC, on and after the Effective Date, based on any claim, as such term is defined in Section 101(5) of the Bankruptcy Code, that existed as of the Petition Date or that could have been asserted against ATC during the bankruptcy proceedings. *See id.* at 2–3. In addition, the discharge provisions contained in the Confirmation Order and the Plan discharge any liability of ATC arising from ATC's pre-petition actions. *See id.* at 3.

## Discussion

### (1)

▬▬▬ ATC moves to dismiss plaintiffs' complaint pursuant to Rule 12(b)(3) because of improper venue.[1] "[O]n a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum district is proper falls on the plaintiff." *United States Envtl. Prot. Agency v. Port Auth. of New York and New Jersey,* 162 F.Supp.2d 173, 183 (S.D.N.Y.2001) (citing *Blass v. Capital Int'l Sec. Group,* No. 99–CV–5738, 2001 WL 301137, at *2 (E.D.N.Y. Mar.23, 2001)). "In a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted, but dismissal of an improperly venued claim is not warranted if it is factually related to a properly venued claim and the claims could be considered 'one cause of action with two grounds of relief.'" *Id.* (quoting 17 James W.M. Moore et al, *Moore's Federal Practice* § 110.05 (3d ed.1997)). Plaintiffs do not dispute that their claim for relief for violations of the Clean Air Act is properly venued in the Southern District of New York. However, plaintiffs urge this court to exercise discretion to hear that claim under the pendent venue doctrine since the second count of the complaint, a claim for a declaratory judgment, is properly venued in the Eastern District of New York.

▬▬▬ "Where … a party advocates exercise of pendent venue over an additional federal claim which is subject to its own specific venue provisions, courts have generally taken one of two approaches. First, some courts have found that the more specific venue provisions control, and have required that the case be brought in a

---

1. Although ATC first moves to dismiss plaintiffs' claims pursuant to Rule 12(b)(6) and then, alternatively, pursuant to Rule 12(b)(3), logic seems to dictate that the question of venue should be addressed first.

venue which satisfies the more specific statute. Second, following an approach developed by courts in the District of Columbia Circuit and adopted by the District Court in the Southern District of New York, some courts determine which of the two federal claims is the 'primary' claim, and apply the venue statute applicable to that claim." *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F.Supp.2d 449, 462–463 (S.D.N.Y.2000) (quoting *Garrel v. NYL-Care Health Plans, Inc.*, No. 98 Civ. 9077, 1999 WL 459925, at *5 (S.D.N.Y.1999)). I adopt the second approach followed by the Southern District of New York as the proper method to analyze pendent federal venue claims.

■ The Clean Air Act contains a venue provision that permits a citizen action to be commenced only in the judicial district in which the offending source of the standard or limitation is located. *See* 42 U.S.C. § 7604(c)(1). Since the source of alleged pollution in this case is located within the Southern District of New York, plaintiffs' claim for violations of the Clean Air Act is properly venued in that district. A declaratory judgment action, on the other hand, is governed by the general federal venue statute, 28 U.S.C. § 1391(b). *See IMS Health, Inc. v. Vality Tech., Inc.*, 59 F.Supp.2d 454, 465 (E.D.Pa.1999). As both defendants can be considered to reside in and are subject to personal jurisdiction in the Eastern District of New York,[2] plaintiffs second claim is properly venued in the Eastern District of New York. Because plaintiffs' principal purpose in bringing this action is not to pursue a Clean Air Act claim for damages sustained by them, but rather to obtain indemnification in the event plaintiffs are sued, the claim for declaratory judgment is properly characterized as the "primary" claim. Accordingly, venue in this District is proper.

### (2)

■ ATC's principal ground to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) is that plaintiffs' claims were discharged in bankruptcy. The Bankruptcy Code provides that confirmation of a reorganization plan discharges all unsecured debts and liabilities incurred before the date of confirmation, regardless of whether proof of the debt is filed, the claim is disallowed, or the plan is accepted by the holder of the claim. *See* 11 U.S.C. § 1141(d)(1) (1993). In order to establish a valid pre-petition claim, two elements must be satisfied. *See In re Manville Forest Prods. Corp.*, 209 F.3d 125, 128 (2d Cir.2000).

■ First, the claimant must possess a "claim" as the term is defined in the Bankruptcy Code. *Id.* Confirmation of a plan "discharges the debtor from *any debt* that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A) (emphasis added). The word "debt" is defined in 11 U.S.C. § 101(12) as "liability on a claim." Congress intended to give a broad definition to the term "claim" and "contemplate[d] that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir.1991). In the context of environmental claims, it has been held that a "claim" exists where contamination was capable of detection prior to confirmation. *See In re Texaco Inc.*, 182 B.R. 937, 952 (Bankr.S.D.N.Y.1995). Since the alleged release of asbestos occurred some time in January of 1999, more than a year prior to the Confirmation Order, and plaintiffs do not dispute that their claims for monetary damages and indemnification constitute a "claim" under the

---

**2.** *See* P. Opp. to Mot. to Dismiss at 15 n. 8.

Defendants do not dispute this point.

Bankruptcy Code, the requirement of a "claim" is satisfied in this case.

■ Second, the claim must have arisen prior to the filing of the bankruptcy petition. *See In re Manville Forest Prods. Corp.*, 209 F.3d at 128. "[A] regulatory environmental claim will be held to arise when 'a potential ... claimant can tie the bankruptcy debtor to a known release of a hazardous substance.'" *In re Crystal Oil Co.*, 158 F.3d 291, 296 (5th Cir.1998) (quoting *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 974 F.2d 775, 786 (7th Cir. 1992)). The inquiry is whether, at the time of bankruptcy, plaintiffs "could have ascertained through the exercise of reasonable diligence" that they had a claim against ATC for the hazardous release in question. *Id.* Plaintiffs do not raise any issue concerning this point. Moreover, considering the fact that the release of asbestos took place months prior to the commencement of the bankruptcy proceedings and that plaintiffs were actively litigating claims against Morgan concerning its inadequate restoration of the leased premises at the time of ATC's bankruptcy, *see* P. Opp. Memo. at 9–10, it is reasonable to conclude that plaintiffs were or should have been aware of the hazardous release in question before the close of ATC's bankruptcy case. Thus, plaintiffs' claims in this case are covered by the statutory definition of a "claim" dischargeable in bankruptcy.

■ However, "discharge under the Bankruptcy Code, ... presumes that all creditors bound by the plan have been given notice sufficient to satisfy due process." *In re U.S.H. Corp. of New York*, 223 B.R. 654, 658 (Bankr.S.D.N.Y.1998). "Inadequate notice is a defect which precludes discharge of a claim in bankruptcy. Due process requires notice that is 'reasonably calculated to reach all interested parties, reasonably conveys all the re-

quired information, and permits a reasonable time for a response.'" *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (quoting *Greyhound Lines, Inc. v. Rogers*, 62 F.3d 730, 735 (5th Cir.1995)). For notice purposes, claimants are divided into two categories, "known" and "unknown." *See id.* "Known creditors" must be provided with actual written notice of a debtor's bankruptcy filing and bar claim date. *See id.* For "unknown creditors," however, notification by publication is generally sufficient. *See id.*

■ The Supreme Court has characterized a "known creditor" as "one whose identity is either known or 'reasonably ascertainable by the debtor.'" 72 F.3d at 346 (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988)). "An 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Id.* A creditor is "reasonably ascertainable" if that creditor can be discovered through "reasonably diligent efforts." *Id.* (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983)). "Reasonable diligence does not require 'impracticable and extended searches.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950)). What is reasonable depends on the particular facts of each case. "A debtor need not be onmipotent or clairvoyant. A debtor is obligated, however, to undertake more than a cursory review of its records and files to ascertain its known creditors." *In re Texaco Inc.*, 182 B.R. at 955. "[W]hat is required is not a vast, open ended investigation." *In re U.S.H. Corp. of New York*, 223 B.R. at 659. Efforts

beyond searching the debtor's own books and records are generally not required. *See id.* The Fifth Circuit, for example, has held that "in order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." *In re Crystal Oil Co.,* 158 F.3d at 297.

Plaintiffs contend that they were known or at least reasonably ascertainable creditors, who were not given the required notice and thus were not discharged in bankruptcy, because ATC had in its possession prior to the Petition Date specific information that reasonably suggested that plaintiffs might have a claim against ATC. Particularly, plaintiffs rely on a December 29, 1998 letter from Steven M. Cherniak ("Cherniak"), Solow's chief executive officer, to ATC project manager Joseph Seiler, written almost seven months prior to ATC's filing for bankruptcy, which stated in part that an inspection of the Morgan premises revealed that the procedures taken by ATC in the asbestos abatement and containment were in violation of city and state regulations. *See* ATC Memo. in Support Exh. E. In addition, the letter stated:

> We demand that you desist from continuing these irregular, and what we are advised are, illegal procedures in the asbestos abatement and containment and *will hold you and your personnel supervising the work responsible for any damages or claims* by personnel in the building for your failure to properly control the asbestos in the Morgan premises.

*See id.* (emphasis added)

Plaintiffs also cite other letters that indicate ATC's knowledge of plaintiffs' awareness of the asbestos problem at the Morgan premises. A January 4, 1999 letter from Cherniak to the President of Safeway copied to ATC advised defendants "not to remove any of the tape applied directly to the asbestos" in order to avoid an asbestos hazard. *See* Green Decl. Exh. A. A January 4, 1999 letter from Cherniak to David Spader of ATC stated in part that Solow is "extremely troubled by ATC's lack of knowledge regarding the work Safeway is conducting in the building" and that it has "serious questions whether or not [ATC is] taking the steps necessary to ensure the health and safety of the building's occupants." *Id.* Exh. B. Again, in a January 5, 1999 letter from Cherniak to Spader, Cherniak mentioned that the job specifications provided by ATC to Safeway were being violated by Safeway and instructed ATC to immediately provide air readings that were supposed to be taken during the abatement program. *See id.* Exh. C. Finally, by a January 29, 1999 letter from Cherniak addressed to ATC and Safeway, Solow advised ATC that it will not be permitted to perform any further construction work on the Morgan premises, noting its findings that "portions of [the premises] have, on numerous occasions, been in violation of both the city and state asbestos regulations and the building's regulation specifications." *Id.* Exh. D. These letters suggest that ATC was on notice of plaintiffs' awareness of the asbestos problem and their intention to hold ATC responsible in case plaintiffs were sued as a result of ATC's misconduct.

Furthermore, plaintiffs point out the fact that, at the time of ATC's bankruptcy, they were actively litigating claims against Morgan concerning its inadequate restoration of the leasehold premises in issue and that ATC was aware of that litigation. In fact, prior to the Petition Date, plaintiffs served subpoenas on ATC and its representatives Joseph Seiler and David Spader, seeking documents and tes-

timony concerning ATC's role in the improper asbestos removal from the Morgan premises. *See id.* Exh. E. Thus, plaintiffs contend that ATC had sufficient information in its possession to confirm plaintiffs' status as known creditors entitled to notice.

Case law seems to suggest that courts dispense with the requirement of actual notice only in cases where a bankruptcy petitioner does not have in its possession any information sufficient to alert the petitioner to the existence of a problem underlying a claim in issue. *See In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 974 F.2d at 788 (the Seventh Circuit concluded that, where the bankruptcy petitioner did not have any idea that its actions led to contamination, that claimants began testing procedures on the site before the close of bankruptcy, and where claimants did not take any steps to inform the petitioner of the situation, the claimants were not entitled to the status of a known creditor); *In re U.S.H. Corp. of New York,* 223 B.R. at 660 (a petitioner could not have been expected to discover any potential claim of the claimants prior to confirmation where there is no building code, standard or law which required the petitioner to follow the building standards at issue in litigation); *In re Texaco Inc.,* 182 B.R. at 954–955 (since the petitioner had no reason to believe that contaminated water stored in pits might have migrated two miles underground to the tract owned by the claimants, claimants were not known creditors); *compare In re Crystal*

*Oil Co.,* 158 F.3d at 297–298 (where the bankruptcy petitioner received a phone call from the claimant regarding a site with a hazardous waste problem and mistakenly concluded that it was not the owner of the property, the issue of whether the claimant was a reasonably ascertainable creditor was entirely an issue of fact).

In this case, defendants knew that their actions led to the asbestos problem. Solow took steps to inform ATC of the problem in numerous letters cited above, one of which was written almost seven months prior to ATC's filing for bankruptcy, addressed to ATC's representative who was still on the scene when ATC filed for bankruptcy, and specifically stated that the plaintiffs "will hold [ATC] and [its] personnel supervising the work responsible for any damages or claims by personnel in the building for [ATC's] failure to properly control the asbestos in the Morgan premises." Finally, ATC was aware of the Morgan litigation involving the asbestos release in issue. Thus, the record contains more than sufficient evidence to support the conclusion that ATC should have been alerted to the possibility that claim might reasonably be filed against it. *In re Drexel Burnham Lambert Group, Inc.,* 151 B.R. 674 (Bankr. S.D.N.Y.1993). Accordingly, Solow is at least a "reasonably ascertainable" creditor entitled to actual written notice of ATC's bankruptcy filing. Since ATC did not provide such notice to plaintiffs, their claims were not discharged in bankruptcy.[3]

---

3. ATC also argues that plaintiffs should not be permitted to file a late proof of claim because such filing would prejudice ATC's creditors. However, "[c]ourts have consistently ruled that when there is no notice of the claims bar date or of the confirmation hearing, a late claim is not barred." *In re Tannen Towers Acquisition Corp.,* 235 B.R. 748, 753 (Bkrtcy. D.N.J.1999) (citing *In re Unioil,* 948 F.2d 678 (10th Cir.1991)); (*In re General Oil Distribu-*

*tors, Inc.,* 68 B.R. 603 (Bankr.E.D.N.Y.1986)). "A creditor who is not given notice, even if it has actual knowledge of the reorganization, does not have a duty to investigate or inject itself into the proceedings." *In re Brunswick Hosp. Ctr., Inc.,* 1997 WL 836684, at *5 (Bankr.E.D.N.Y. Sept.12, 1997). Since it has been established that it is reasonable to conclude that plaintiffs enjoy the status of a known creditor, ATC's failure to give plaintiffs

## Conclusion

ATC's motion to dismiss because of improper venue under Rule 12(b)(3) is denied. ATC's motion to dismiss under Rule 12(b)(6) is also denied.[4]

actual notice of the bankruptcy proceedings renders its prejudice argument meritless.

4. Although both parties rely on documents outside the pleadings, neither party has made a motion for summary judgment. Accordingly, the court has treated ATC's motion solely as a motion to dismiss, although, it appears that in the absence of additional evidence, a ruling to strike ATC's defense as a matter of law would seem in order.