**Aaron C. JAMES, Sr., Plaintiff,**

v.

**BOOZ–ALLEN & HAMILTON, INC., Defendant.**

**No. 00–2509(RMU).**

United States District Court, District of Columbia.

July 31, 2002.

Barbara Bethune Hutchinson, New Carrollton, MD, for Plaintiff.

Aaron C. James, Sr., Mitchellville, MD, Pro se.

Rosemary M. Collyer, Terence Francis Flynn, Andrew William Bagley, Crowell & Moring, L.L.P., Washington, DC, for Defendant.

Rhonda L. Weaver, Office of the County Attorney, Upper Marlboro, MD, Non party.

### MEMORANDUM OPINION

URBINA, District Judge.

TRANSFERRING THE CASE TO THE EASTERN DISTRICT OF VIRGINIA

## I. INTRODUCTION

This case arises from a complaint filed by Mr. Aaron James, Sr. ("the plaintiff") alleging that his employer, Booz–Allen & Hamilton, Inc. ("the defendant"), discriminated against him on the basis of his race. The defendant moves the court to dismiss the action for improper venue, asserting that the alleged discriminatory act did not occur in the District of Columbia, that the employment records are not located in the District of Columbia, and that the plaintiff would not have worked in the District of Columbia "but for" the alleged discriminatory act. After consideration of the parties' submissions and the relevant law, the court determines that venue is improper in this district and thereby transfers the case to the Eastern District of Virginia.

## II. BACKGROUND

### A. Factual Background

The plaintiff, a black male, began working for the defendant in 1988, leaving in 1994 and returning in 1996 to work for the defendant as a senior associate. Am. Compl. ("Compl.") ¶¶ 1, 4. In his new position as a senior associate, the plaintiff served as the project manager for the defendant's contract with the Washington Metropolitan Area Transit Authority ("WMATA"). Id. at ¶ 5. In February 1999, as a result of the WMATA's complaints about the plaintiff, the defendant discharged the plaintiff from his position as project manager. Id. at ¶ 9. The defendant then offered the project manager position to another individual, a white male, who had prior experience working with the defendant on the WMATA contract. Id. at ¶ 10. Although the plaintiff was not demoted, he felt that his duties after his discharge as project manager diminished in quality and his career stagnated. Id. at ¶ 13; Prince George's County Human Relations Commission's ("PGCHRC") Letter of Determination, dated May 15, 2000 ("PGCHRC Letter of Determination"); Def.'s Mot. to Dismiss for Improper Venue ("Def.'s Mot."), Ex. 1–B at 3. Consequently, the plaintiff resigned from his position with the defendant in July 1999. Compl. ¶ 13.

On March 26, 1999, the plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and with the PGCHRC, alleging unlawful employment discrimination by the defendant on account of the plaintiff's race, in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981(a). *Id.* ¶ 3. Pursuant to a works-hare agreement, PGCHRC conducted an initial investigation of the plaintiff's complaint and, on May 18, 2000, found that there was insufficient evidence to support the plaintiff's allegations of discrimination. PGCHRC Letter of Determination at 8. On July 21, 2000, the EEOC adopted the findings of PGCHRC and provided the plaintiff with a "right to sue" letter, informing him that he had 90 days from receipt of the letter to file a suit in federal or state court relating to his allegations of discrimination. EEOC Dismissal and Notice of Rights, dated July 21, 2000.

## B. Procedural Background

On October 19, 2000, the plaintiff filed his *pro se* complaint in this court. The clerk's office informed the court that the plaintiff had failed to serve the defendant with a copy of the complaint and that the plaintiff had failed to provide a copy of a "right to sue" letter issued by the subject county commission. In response to these defects, the court issued an order on January 16, 2001 directing the plaintiff to satisfy these requirements. Order, dated Jan. 16, 2001. On February 6, 2001, the plaintiff responded with the appropriate filing and also indicated that he had retained counsel to represent him in the matter. *See* Pl.'s Notice of Filing, dated Feb. 6, 2001. On March 9, 2001, the clerk's office received a return of service indicating that the plaintiff served the defendant with a summons and the complaint on February 12, 2001. Noting that the deadline for a timely response to the complaint had expired, the court issued an order on May 21, 2001 directing the defendant to show cause ("show cause order") as to why no response had been filed and why the court should not proceed to enter default judg-

ment in the case. Show Cause Order. The defendant filed a response to the court's show cause order on June 7, 2001, challenging the plaintiff's service of process and arguing that default judgment is not appropriate. Def.'s Resp. to Show Cause Order at 4. The defendant filed a submission styled as a "Reply to Plaintiff's Response to Booz Allen's Response to Order to Show Cause" on July 3, 2001, in which the defendant moved the court to dismiss the complaint for deficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) or, in the alternative, to quash service. *See* Def.'s Resp. at 8. Concurrent with the dispute relating to service of process, on June 1, 2001, the plaintiff issued a subpoena *duces tecum* to PGCHRC (a non-party to this litigation) requesting production of copies of the discrimination complaint file, including any and all documents filed by the defendant. *See* PGCHRC's Mot. to Quash, Attach. A. PGCHRC filed a motion to quash the subpoena on June 21, 2001. Resolving the above named issues, the court denied entry of default judgment, granted the defendant's motion to quash the plaintiff's service of process, and granted PGCHRC's motion to quash the subpoena *duces tecum.* Mem. Op. and Order, dated Feb. 12, 2002.

After retaining counsel, the plaintiff filed an amended complaint with the court on March 6, 2002. Accordingly, the amended complaint is the operative complaint. The defendant now moves the court to dismiss the complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). The plaintiff has filed an opposition to this motion claiming that venue is proper, but if the court finds that it is improper, then the plaintiff asks the court to transfer the case to the Eastern District of Virginia. Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 7. For the reasons that follow, the court concludes that venue is

improper in this district and transfers the case to the Eastern District of Virginia.

## III. ANALYSIS

### A. Legal Standard for Venue in Title VII Cases

■ Federal Rule of Civil Procedure 12(b)(3) states that the court will dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum. FED. R. CIV. PROC. 12(b)(3). In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, the court draws all reasonable inferences from those allegations in the plaintiff's favor, and the court resolves any factual conflicts in the plaintiff's favor. *2215 Fifth Street Assocs. v. U–Haul Int'l, Inc.*, 148 F.Supp.2d 50, 54 (D.D.C.2001) (Huvelle, J.). The court, however, need not accept the plaintiff's legal conclusions as true. *Id.*

■ Under 42 U.S.C. § 2000e–5(f)(3), a plaintiff may bring a Title VII action in any one of four judicial districts. The statute provides that:

[s]uch an action may be brought in [1] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e–5(f)(3). In Title VII cases, Congress intended to limit venue to those jurisdictions concerned with the alleged discrimination. *Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C.Cir.1969) ("*Stebbins I* ").

■ If the plaintiff brings suit in a jurisdiction that does not satisfy one of the venue requirements listed in 42 U.S.C. § 2000e–5(f)(3), venue is improper. 42 U.S.C. § 2000e–5(f)(3); *Washington v. Gen. Elec. Corp.*, 686 F.Supp. 361 (D.D.C. 1988) (Richey, J.). When a plaintiff files an action in the wrong venue, 28 U.S.C. § 1406(a) directs courts to "dismiss, or if it be in the interest of justice, transfer such case" to the proper venue. 28 U.S.C. § 1406(a). Generally, the "interest of justice" instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).

■■ Courts can determine venue by applying a "commonsense appraisal" of events having operative significance. *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C.Cir.1978); *Donnell v. Nat'l Guard Bureau*, 568 F.Supp. 93, 94 (D.D.C.1983) (Green, J.). Specifically, venue cannot lie in the District of Columbia when "a substantial part, if not all, of the employment practices challenged in this action" took place outside the District even when actions taken in the District "may have had an impact on the plaintiff's situation." *Donnell*, 568 F.Supp. at 94. The court now turns to the defendant's motion to dismiss.

### B. The Court Determines that Venue is Not Proper in this Jurisdiction

■ As an initial matter, the court addresses the defendant's assertion that the plaintiff's Title VII claim under 42 U.S.C. § 2000e–5 is the principal claim named in the complaint because it is the only statute cited in paragraph 14 of the complaint. Def.'s Mot. at 5 n. 2. The defendant's

cursory interpretation of the complaint fails to identify that paragraph three indicates that claims under 42 U.S.C. §§ 1981(a) and 2000e–5 are collectively referred to as "Title VII" throughout the remainder of the complaint, including paragraph 14. Compl. ¶ 3. This court may apply venue standards pursuant to 28 U.S.C. § 1391 if analyzing a claim under 42 U.S.C. § 1981. *Stebbins v. Nationwide Mut. Ins. Co.*, 757 F.2d 364, 369 (D.C.Cir. 1985) (*"Stebbins II"*) (citing *Stith v. Manor Baking Co.*, 418 F.Supp. 150, 155 (W.D.Mo.1976)). The section 2000e–5 claim, however, is subject to a narrower venue provision. 42 U.S.C. § 2000e–5(f)(3); *Stebbins I*, 413 F.2d at 1102. The plaintiff asserts that venue is proper under the narrower venue provision codified in 42 U.S.C. § 2000e–5(f)(3), and does not argue proper venue under 28 U.S.C. § 1391.[1]

■ Although the parties have not asked the court to exercise pendent venue in the instant action, venue is determined by the analysis of the stricter Title VII venue provisions set forth in 42 U.S.C. § 2000e–5(f)(3). 42 U.S.C. § 2000e–5(f)(3). Indeed, the greater weight of authority suggests that when a plaintiff brings a Title VII action under both 42 U.S.C. §§ 1981 and 2000e–5, the narrower venue provision of section 2000e–5(f)(3) controls. *Stebbins II*, 757 F.2d at 367 (determining that the general venue statute under 28 U.S.C. § 1391 does not provide an additional place of venue where the terms of 42 U.S.C. § 2000e–5(f)(3) are not met); *Hayes v. RCA Serv. Co.*, 546 F.Supp. 661, 664–65 (D.D.C.1982) (Sirica, J.); *Trujillo v. Total Bus. Sys., Inc.*, 704 F.Supp. 1031, 1032 (D.Colo.1989) (holding that a plaintiff must bring discrimination claims under 42

U.S.C. §§ 1981 and 2000e where venue lies under 42 U.S.C. § 2000e–5(f)(3)); *Kravec v. Chicago Pneumatic Tool Co.*, 579 F.Supp. 619, 622 (N.D.Ga.1983) (explaining that the more specific venue provisions of Title VII supersede other claims). As mentioned earlier, in *Stebbins I*, the D.C. Circuit examined the language of section 2000e–5(f)(3) and determined that "the intent of Congress to limit venue to the judicial districts concerned with the alleged discrimination seems clear" and that provision should supercede broader venue provisions. *Stebbins I*, 413 F.2d at 1102; *Kravec*, 579 F.Supp. at 622 (recognizing *Stebbins I* as the "leading case" in determining the prevailing venue provision).

Some courts confronted with facts similar to those in the case at bar have adopted another approach in determining venue by evaluating which of the two federal claims is "primary," and applying the venue provision of the primary claim. *Turbeville v. Casey*, 525 F.Supp. 1070, 1071 (D.D.C.1981) (Green, J.) (holding that the primary claim is Title VII and its venue provisions control the secondary Equal Pay Act claim); *Hsin Ten Enters. USA, Inc. v. Clark Enters.*, 138 F.Supp.2d 449, 462–63 (S.D.N.Y.2000); *Solow Bldg. Co. v. ATC Assocs., Inc.*, 175 F.Supp.2d 465, 470 (E.D.N.Y.2001). This court adopts the rule in *Stebbins I* and thereby applies the venue provision outlined in 42 U.S.C. § 2000e–5(f)(3) to the instant motion. But even if the court *in arguendo* were to follow the minority approach as outlined in *Turbeville*, the court would still conclude that the plaintiff's 42 U.S.C. § 2000e claim is the primary claim asserted in the complaint, thereby applying the Title VII venue provision in determining

---

**1.** Title 28 U.S.C. § 1391(a) provides: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a).

how to rule on the defendant's instant motion to dismiss. *Turbeville*, 525 F.Supp. at 1071; *Hsin Ten Enters. USA*, 138 F.Supp.2d at 462–63; *Solow Bldg. Co.*, 175 F.Supp.2d at 470.

### 1. The Alleged Discriminatory Acts Did Not Take Place in This District

█ Under section 2000e–5(f)(3), the court's first inquiry focuses on the locus of the alleged discrimination. *Washington*, 686 F.Supp. at 363. The plaintiff claims that the defendant wrongly removed the plaintiff from his position as project manager for the defendant's contract with the WMATA. Compl. ¶ 5, 9. The plaintiff asserts that the decision to remove him from his position as project manager, coupled with the fact that his replacement was a white male comprise intentional acts of race discrimination. *Id.* ¶¶ 10, 14. Therefore, in the instant case, the discriminatory act of "operative significance" is the plaintiff's removal from the position of project manager and his replacement with a white male. *Washington*, 686 F.Supp. at 363.

The defendant asserts that Mr. Shulman, the plaintiff's immediate manager who works out of New Jersey, and Mr. Salameh, the defendant's vice-president who works out of California, jointly made the decision to remove the plaintiff from his position as the WMATA project manager. Def.'s Mot. at 7; Schulman Aff. ¶¶ 2, 6. This decision was made in February 1999 after several discussions taking place in New Jersey, California, and/or the defendant's Virginia headquarters.[2] Def.'s Mot. at 7; Schulman Aff. ¶ 6. The defendant claims that the plaintiff was notified of this decision in Maryland and/or Virginia. *Id.* Accordingly, the alleged discriminatory act did not occur in the District of Columbia.[3] Therefore, venue is not proper in the District of Columbia under the first prong of the Title VII venue statute. 42 U.S.C. § 2000e–5(f)(3).

### 2. Relevant Documents to This Case are Not Located in This District

The second prong of the Title VII venue statute requires that the employer "maintained and administered" employment records in "*the* judicial district" where venue

2. Although the plaintiff agrees that Mssrs. Schulman and Salameh made the decision to replace him, the plaintiff asserts that the defendant has provided no evidence that the decision was made outside of the District of Columbia. Pl.'s Opp'n at 5. As noted, the defendant cites the sworn affidavit of Mr. Schulman in reaching this conclusion. Def.'s Mot. at 7; Schulman Affidavit at ¶ 6. The plaintiff argues that the defendant has produced no evidence indicating that the decision was made outside of the District of Columbia, but does not assert any alternative location for the decision. Pl.'s Opp'n at 5. Moreover, the plaintiff's complaint is silent on this point. Therefore, since neither Mssrs. Schulman or Salameh have worked in the District of Columbia, coupled with Mr. Schulman's affidavit, and no allegations in the plaintiff's complaint to the contrary, the court infers that the defendant did not make its decision to replace the plaintiff in this district. *2215 Fifth Street Assocs.*, 148 F.Supp.2d at 54.

3. The plaintiff asserts that the acts which led to his dismissal occurred in the District of Columbia. Pl.'s Opp'n at 5 n. 1. The plaintiff adds footnote 1 in the plaintiff's opposition brief to demonstrate venue by referencing paragraph 10 of the operative complaint. *Id.* But paragraph 10 states: "[t]he defendant replaced the plaintiff with Richard Trabucco, a white male." Compl. ¶ 10. This statement does not indicate that the acts leading to the plaintiff's dismissal occurred in the District of Columbia. *Id.* In fact, nowhere in the complaint does the plaintiff state the location where the alleged discriminatory acts took place. Compl. As such, the defendant correctly asserts that although the WMATA managers voiced their request for removal of the plaintiff from the District of Columbia, those requests do not form the nucleus of the alleged discriminatory acts. *Donnell*, 568 F.Supp. at 94; Def.'s Mot. at 7 n. 3.

is sought. 28 U.S.C. § 2000e–5(f)(3) (emphasis added). The statute's use of the singular (i.e., "the judicial district") makes clear that Congress intended venue to lie on the basis of the presence of records only in one judicial district in which the complete, "master" set of employment records is "maintained and administered." *Washington*, 686 F.Supp. at 363.

In the instant action, the defendant-employer maintains and administers its master set of employment records in its corporate headquarters located in McLean, Virginia. Def.'s Mot. at 8; Meyers Aff. ¶ 8. None of the plaintiff's personnel records are maintained and administered in the District of Columbia. *Id.* Although the plaintiff's complaint advances no allegations to the contrary, the plaintiff counters the defendant's argument by stating that his time sheets were submitted to his supervisor, Mr. Schulman, in Newark, New Jersey. Pl.'s Opp'n at 6. This is inconsistent with the sworn statement of the defendant's in-house counsel, affirming that the defendant's employment records are maintained and administered in Virginia. Def.'s Mot. Ex. 1 at ¶ 8. Even accepting the plaintiff's factual allegations as true, the court notes that the plaintiff's argument only signals the possibility that venue lies in New Jersey, rather than demonstrating that venue is proper in the District of Columbia. *2215 Fifth Street Assocs.*, 148 F.Supp.2d at 54. Thus, the plaintiff does not meet his burden for proper venue under the second prong of the Title VII venue statute. 42 U.S.C. § 2000e–5(f)(3).

### 3. The Plaintiff Would Not Have Worked in This District "But For" the Alleged Discrimination

A plaintiff can satisfy the third prong under the Title VII venue provision when he would have worked in the District of Columbia "but for" the alleged discrimination. 28 U.S.C. § 2000e–5(f)(3). It is important to note that the language of the statute requires that the District of Columbia be "*the* judicial district" in which the plaintiff "would have worked" had he not been removed from his position as the WMATA project manager. *Id.* (emphasis added). As reasoned before, the use of the article "the" rather than "a" strongly suggests that the statutory requirement refers to the aggrieved individual's principal place of work, and not any district in which the individual's work might take him. *Id.; EEOC v. Mayflower Transit, Inc.*, 1993 U.S. Dist. LEXIS 8181, at *4–5 (D.D.C.1993) (Oberdorfer, J.).[4]

The defendant alleges that the plaintiff would not have worked in the District of Columbia "but for" the alleged discrimination by reiterating the plaintiff's geographical tenure with the defendant.[5] Def.'s Mot. at 8–9; Def.'s Reply at 6–9. While this is an interesting proposition, it does not educate the court as to whether the plaintiff *would* have worked in the District of Columbia "but for" the alleged discrimination. The defendant contends that "but for" the alleged discriminatory acts, the plaintiff would have presumably continued to serve as the WMATA project manager

---

**4.** Judge Oberdorfer's decision in *Mayflower Transit* has an illustrative hypothetical to demonstrate this point. If the statute is not interpreted as set forth, where a sales representative works out of an office in one state, but made calls in 25 other states, then they could sue in any one of those states on the ground that they "worked" in each. *Mayflower Transit*, 1993 U.S. Dist. LEXIS 8181, at

*5. This would understandably lead to a confusing result in applying appropriate venue.

**5.** The court notes that the defendant-movant does not cite to any authority to support its proposition that the plaintiff fails to establish proper venue in the District of Columbia under the third prong, "but for" analysis.

and continued working at the defendant's offices located in Seabrook, Maryland. Def.'s Mot. at 9. The defendant notes that between June 1999 and April 2000, the defendant temporarily relocated its Seabrook offices to the District of Columbia. *Id.* at 9 n. 4; Schulman Aff. ¶ 3. The parties do not dispute that the plaintiff did indeed work in the District of Columbia for about six weeks before he resigned. *Id.*

In response, the plaintiff posits that because his successor was appointed to work with the WMATA out of the District of Columbia, the plaintiff would also have been relocated to the District of Columbia.[6] Pl.'s Opp'n at 4–5. The plaintiff's argument, however, neglects the fact that the plaintiff's base of operation was at the defendant's offices in Seabrook, Maryland. Def.'s Mot. at 9. As such, in any case the District of Columbia would not have been "the judicial district" where the plaintiff would have worked as an employee of the defendant, who had merely agreed to perform work under the WMATA contract in the District of Columbia for a finite term. *Id.* Therefore, venue does not lie in the District of Columbia under the third prong of 42 U.S.C. § 2000e–5(f)(3). 42 U.S.C. § 2000e–5(f)(3); *Mayflower Transit,* 1993 U.S. Dist. LEXIS 8181, at *4–5.

#### 4. The Fourth Prong of 42 U.S.C. § 2000e–5(f)(3) Need Not Be Established

Turning to the last prong of the Title VII venue statute, the plaintiff may bring his Title VII action in the district where the defendant has its principal place of business only if the defendant cannot be found in any other districts where venue is appropriate. 42 U.S.C. § 2000e–5(f)(3); *McManus v. Washington Gas Light Co.,* 1991 WL 222345, at *3 (D.D.C.1991) (Lamberth, J.). Although venue does not lie in the District of Columbia, the court's analysis of the first three prongs reveals that the plaintiff could properly assert venue in several other districts. As such, the court need not consider the fourth prong of the Title VII venue statute in determining whether venue is proper in this district. 42 U.S.C. § 2000e–5(f)(3). Even if the court were to analyze the defendant's argument under the fourth prong, the court would nonetheless conclude that venue is improper in the District of Columbia because the defendant's principal place of business is located in the Eastern District of Virginia. *Id.;* Compl. ¶ 2.

### C. Transfer to the Eastern District of Virginia

 One final point merits attention. The court determines whether it should transfer the case to the Eastern District of Virginia as per the plaintiff's request. Pl.'s Reply at 7. Where the court determines that venue is improper, the Title VII venue statute, 42 U.S.C. § 2000e–5(f)(3), provides that transfer under 28 U.S.C. § 1406(a) is appropriate to any judicial district where the plaintiff could

---

**6.** The plaintiff's operative complaint does not reveal the location of his work while in the defendant's employ, the location of where his successor was assigned, nor any other basis for venue. Compl. The plaintiff does point, however, to the defendant's motion at exhibits 2 and 3 to demonstrate that the plaintiff's successor was stationed in the District of Columbia. Pl.'s Opp'n at 5 (citing Def.'s Mot., Ex. 2–3). Further, the plaintiff cites *Johnson v. Washington Gas Light Co.,* 89 F.Supp.2d 45 (D.D.C.2000) (Robertson, J.) (holding that a plaintiff satisfies the third prong when that plaintiff might have been appointed to a position in the District of Columbia), to support his argument. Pl.'s Opp'n at 7. The instant case is distinguished from *Johnson* because, at best, the plaintiff would have continued his assignment given by the defendant to work with the WMATA for the finite duration of that project, and at its conclusion continued his employment with the defendant. Pl.'s Opp'n Ex. 3; *but see Johnson,* 89 F.Supp.2d at 47.

have originally brought his case. *Washington*, 686 F.Supp. at 364. *E.g., Turbeville*, 525 F.Supp. at 1072. Whether transferring this case is in the interest of justice rests within the sound discretion of the court. *Hayes*, 546 F.Supp. at 665. Moreover, in light of the restrictiveness of the venue provisions for Title VII cases, courts have routinely transferred such cases to neighboring jurisdictions when a plaintiff fails to carry his burden to demonstrate proper venue. *E.g., Mackey v. Sullivan*, 1991 WL 128510 (D.D.C.1991) (Hogan, C.J.); *McManus*, 1991 WL 222345; *Archuleta v. Sullivan*, 725 F.Supp. 602 (D.D.C.1989) (Revercomb, J.); *Hayes*, 546 F.Supp. at 661.

Here, the defendant made its decision to remove the plaintiff from the WMATA project outside of the District of Columbia. Indeed, the defendant made this decision in either the Eastern District of Virginia, New Jersey, California, or all of the above. Def.'s Mot. at 7; Schulman Aff. ¶ 6. In addition, the plaintiff's employment records and the defendant's principal place of business are located in the Eastern District of Virginia. Def.'s Mot. at 8; Meyers Aff. ¶ 8; Compl. ¶ 2. Furthermore, the time the plaintiff would have spent in the District of Columbia had he retained his position as the WMATA project manager would have been for a finite period of time since he would have continued to maintain his base of operation in Seabrook, Maryland. Def.'s Mot. at 9. In sum, the various factors considered by the court weigh in favor of venue properly lying in the Eastern District of Virginia. In any case, the defendant does not challenge such a transfer. Def.'s Reply at 9. As such, the court determines that transferring this case to the Eastern District of Virginia serves the interest of justice. *Hayes*, 546 F.Supp. at 665.

## IV. CONCLUSION

For all of the foregoing reasons, the court transfers this case to the Eastern District of Virginia. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 31st day of July 2002.

## *ORDER*

### TRANSFERRING THE CASE TO THE EASTERN DISTRICT OF VIRGINIA

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously issued this _____ day of July 2002, it is hereby

**ORDERED** that this case be **TRANSFERRED** to the Eastern District of Virginia.

**SO ORDERED.**