Ms. Sheila QUARLES, et al., Plaintiff,

v.

GENERAL INVESTMENT & DEVELOPMENT CO., et al., Defendants.

No. CIV.A.02–1303(RBW).

United States District Court, District of Columbia.

March 10, 2003.

Clayborne Edwin Chavers, Sr., The Watergate Office Building, Washington, DC, Leslie David Alderman, III, Alderman & Devorsetz, PLLC, Washington, DC, for plaintiffs.

David Peter Blackwood, Selzer, Gurvitch Rabin & Obecny, Chartered, Bethesda, MD, for defendant.

### MEMORANDUM OPINION

WALTON, District Judge.

The present lawsuit appears at first blush to be a garden-variety type Title VII action. However, the motions filed by defendants, which, if granted in total would effectively dispose of all of the claims in plaintiffs' complaint, raise a host of complicated issues for the Court to resolve. After careful consideration of the parties' pleadings and the existing legal precedent, the Court concludes that rulings on defendants' motion to dismiss the plaintiffs' class action claims and two of the plaintiffs' District of Columbia Human Right Act claims must be deferred and that defendants' remaining motions should be granted in part and denied in part.

### I. *Factual Background*

The lawsuit in this matter involves claims by all of the named plaintiffs of racial discrimination, also claims of gender discrimination by three of these plaintiffs and a claim of age discrimination by one plaintiff. The four named plaintiffs—Sheila Quarles, Tammy Rogers, Ebony Thomas, and Anthony Bellamy—allege, *inter alia,* that the defendants [1] have engaged in a practice of racial discrimination against minorities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000). These alleged practices include

[f]orcing past and current qualified African American employees [1] to hold intermediary positions prior to advancement that equally and/or less qualified white individuals are not forced to hold ... [2] to meet requirements for promotion that and/or [sic] less qualified white employees are not required to meet ... [3] failing to promote past and current qualified African American employees ... [4] failing to notify past and current qualified African American employees of job openings ... [and][5] otherwise prohibiting, based on their race, qualified past and current qualified African–American employees from advancement in the defendants' corporations.

Compl. ¶ 24.[2]

Defendants have jointly filed four separate motions: (1) Motion to Dismiss Plaintiffs' Class Action Claims; (2) Motion to Dismiss Title VII Claims for Lack of Venue; (3) Motion to Dismiss Counts I, II, V and VI Relating to Title VII Claims; and (4) Motion to Dismiss Claims Based on District of Columbia Human Rights Act.

---

1. The named defendants include General Investment and Development Company, Windsor Property Management Company, and Windsor Investment Company.

2. References to "Compl." are to the first amended complaint plaintiffs filed on August 30, 2002.

The Court will address each of the defendants' motions in turn.

## II. *Analysis*

### A. *Defendants' Motion to Dismiss Plaintiffs' Class Action Claims*

██ Defendants have moved for the dismissal of plaintiffs' class action allegations pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss based on this rule, a complaint need only provide " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citing Fed. R.Civ.P. 8(a)). When reviewing such a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which she or he is entitled to relief. *Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000). Specifically, a complaint in an employment discrimination lawsuit does not need to assert specific facts to establish a prima facie case of discrimination, but need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema*, 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing Fed.R.Civ.P. 8(a)(2)); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C.Cir.2000). Thus, a complaint should not be dismissed

for failure to state a claim unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

In Count One of their First Amended Complaint, plaintiffs make allegations on behalf of "all African American persons currently and previously employed by any of the above-named defendants ... [,which] includes at least thirty individuals who currently reside and work in various jurisdictions throughout the Eastern United States." Compl. ¶¶ 16–17. Defendants, in their motion to dismiss plaintiffs' class action claims, argue that plaintiffs cannot meet the certification requirements of Federal Rules of Civil Procedure 23(b)(2) or (b)(3).[3] First, defendants argue that the plaintiffs do not meet the requirements of Rule 23(b)(2) because they seek to recover compensatory damages, in addition to back-pay, front pay, and punitive damages, which will require individualized evidence regarding damages as to each plaintiff. Defendants' Motion to Dismiss Plaintiffs' Class Action Claims ("Defs.' Class Mot.") at 7, 9. Second, defendants argue that certification of a class is similarly inappropriate pursuant to Rule 23(b)(3) because plaintiffs' attempt to recover compensatory damages would require "extensive review of each [p]laintiff's individual circumstances[, and] [b]ecause of the lack of commonality, the present case will result in the need for numerous separate mini-trials for each of the [p]laintiffs." *Id.* at 10–11. Plaintiffs counter that other judges of this court have recently ruled that a Title VII class action may

---

**3.** In their opposition, plaintiffs state that they no longer seek certification pursuant to Federal Rule of Civil Procedure 23(b)(1). Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Class Action Claims ("Pls.' Opp'n") at 1. Accordingly, the Court need not address defendants' challenge to plaintiffs' request for class certification based on Rule 23(b)(1).

be properly certified under Rules 23(b)(2) and (b)(3), despite the fact that the plaintiffs in the class were seeking compensatory damages. Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Class Action Claims at 1. In addition, plaintiffs argue that even if the class could not be wholly certified under Rules 23(b)(2) or (b)(3), another alternative available to the Court would be hybrid certification of the class, *i.e.*, the claims for injunctive and declaratory relief could be certified pursuant to Rule 23(b)(2) and the claims for monetary relief could be certified pursuant to Rule 23(b)(3). *Id.* at 2–3.

■ Pursuant to Federal Rule of Civil Procedure 23, before a court can determine whether a class action can be maintained, the court must satisfy itself that the putative class meets the four prerequisites of Rule 23(a). These prerequisites are that the class: (1) is so numerous "that joinder of all members is impracticable"; (2) has common issues of law or fact; (3) that the claims of the class representatives "are typical of the claims ... of the class"; and (4) that the interests of the class will be "fairly and adequately protect[ed]" by the representative parties. Fed.R.Civ.P. 23(a). It is *only* when a class has met these four prerequisites that the Court must then determine whether the class may be maintained pursuant to one of the subdivisions of Rule 23(b). *See* Fed. R.Civ.P. 23(b) ("An action may be maintained as a class action *if* the prerequisites of subdivision (a) are satisfied, and in addition [one of the subdivisions of Rule 23(b) are established]") (emphasis added).

Although neither party seriously disputes that plaintiffs can satisfy the four prerequisites, the Court must nonetheless ascertain for itself whether the requirements of Rule 23(a) are satisfied. *See General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740

(1982) ("we reiterate today that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."). Here, plaintiffs have not yet filed a motion for certification of the class because the Court granted them until ninety days after the issuance of a scheduling order or the date of the initial scheduling conference, whichever occurred later, to file such a motion. *See* Court Order dated September 5, 2002. The initial scheduling conference in this matter was held on December 10, 2002, but a full scheduling order has not been issued because the case was referred for immediate mediation and the Court wanted to address the defendants' other dismissal motions prior to issuing a scheduling order.

As indicated, before the Court can address the merits of the arguments advanced by the defendants regarding whether certification of the class comports with Rules 23(b)(2) or (b)(3), the Court must determine whether the class meets the prerequisites of Rule 23(a). Although, pursuant to Local Civil Rule 23.1(b), the defendants were permitted to "move at any time to strike the class action allegations or to dismiss the complaint[,]" the pleadings as they now exist do not permit the Court to intelligently determine whether the class, as now comprised, meets the requirements for certification under Rule 23(a). *See General Telephone Co.,* 457 U.S. at 160, 102 S.Ct. 2364 ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). In this case, for example, the complaint alleges that the putative class will,

"[o]n information and belief[,] include[ ] at least thirty individuals who currently reside and work in various jurisdictions throughout the Eastern United States." Compl. ¶ 17. At this point, however, the actual composition of the ultimate class is unknown to the Court. In addition, defendants raise issues which suggest that the potential class may not meet the prerequisites of Rule 23(a). For example, defendants argue in their motion to dismiss the class action claims that because there is a "lack of commonality, the present case will result in the need for numerous separate mini-trials for each of the [p]laintiffs." Defs.' Class Mot. at 11. In support of this allegation, defendants note:

> Mr. Bellamy's situation as a maintenance engineer in Shirlington, Virginia will not be the same as that for a resident manager, such as Ms. Rogers, located in Mechanicsville, Virginia. Similarly, Ms. Quarles, as a senior marketing representative in Rockville, Maryland will not have faced the same circumstances as Ms. Thomas, who worked at a property in Herndon, Virginia.

*Id.*

Commonality is one of the prerequisites for class certification. *See* Fed.R.Civ.P. 23(a)(2). Indeed, the varying positions and circumstances of the members of the class may make certification unfeasible. *See, e.g., Rumpke v. Rumpke Container Service, Inc.,* 205 F.R.D. 204, (S.D.Ohio 2001) (denying class certification where plaintiff's situation as a route supervisor and former employee of the defendant was not common with the claims of drivers and route supervisors he sought to certify as a class because plaintiff had never been a driver with defendant's company and "the claims of all the route supervisors [did] not seem to be the same."). In fact, the District of Columbia Circuit has held that plaintiffs "seeking certification of a class

cutting across employment status or job categories [must provide] a 'specific presentation' identifying the questions of law or fact common to the class representative and the members of the class proposed." *Wagner v. Taylor,* 836 F.2d 578, 589 (D.C.Cir.1987); *Hartman v. Duffey,* 19 F.3d 1459, 1472 (D.C.Cir.1994) (quoting *Wagner* ). This has not yet occurred in this matter and plaintiffs have not been afforded the opportunity to do so.

Therefore, while the court "does not possess[ ] 'any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action,' ... it is evident that some inspection of the circumstances of the case is essential to determine whether the prerequisites of Federal Civil Rule 23 ... have been met." *Wagner,* 836 F.2d at 587. Although both parties have leaped to the more analytically attractive issue of whether plaintiffs can maintain a class action where they seek compensatory damages, the pleadings as they now stand do not permit the Court to conduct the "rigorous analysis [it must conduct to determine] that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co.,* 457 U.S. at 161, 102 S.Ct. 2364; *see also Hartman,* 19 F.3d at 1473 (reversing district court's class certification ruling and remanding the case to the district court for a determination of whether the class should be certified because the class representative's "complaint and motions for class certification ... evince[d] a complete absence of factual allegations regarding the commonality or typicality requirements of Rule 23. This failure is compounded by the fact that prior to entry of the conditional class certification, the trial court apparently did not conduct any evidentiary hearing or other factual determination that would qualify as a rigorous analysis of whether the prerequisites for a class action had been met.").

For the reasons stated above, the Court is compelled to defer reaching the issues raised by the defendants' motion to dismiss the class action claims until it has before it the information necessary for it to determine whether the potential class meets the requirements of Rule 23(a). Accordingly, the Court will order the plaintiffs to file a motion for certification that fully sets forth their factual and legal positions, so that the Court will be in a better position to evaluate whether the Rule 23(a) prerequisites are satisfied. Once all of the pleadings on the issue have been filed, the Court will determine whether an evidentiary hearing is required. The Court will then address defendants' motion to dismiss plaintiffs' class action claims.

## B. *Defendants' Motion to Dismiss Plaintiffs' Title VII Claims for Lack of Venue*

Defendants seek to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3), because, they argue, venue in this district is improper for several reasons. First, the defendants allege that plaintiffs have failed to allege in the complaint "with any specificity where the alleged instances of employment discrimination occurred." Defendants' Motion to Dismiss Title VII Claims for Lack of Venue ("Defs.' Venue Mot.") at 2. Second, defendants maintain that each of the named plaintiffs must meet the venue requirements and, as verified by the affidavit [1] of Patricia Shannon, Affidavit of Patricia Shannon, dated September 13, 2002 ("Shannon Aff."), the regional vice president for the Mid–Atlantic region of defendant Windsor Property Management Company, none of the plaintiffs were employed in the District of Columbia or had any other connection with this district. *Id.* at 3. In her affidavit, Ms. Shannon states that plaintiff Quarles was "employed exclusively" in Rockville, Maryland; plaintiff Rogers was "employed exclusively" in Mechanicsville, Virginia; plaintiff Thomas was employed in Herndon, Virginia and Elkridge, Maryland, and plaintiff Bellamy "has been employed exclusively in Virginia." Shannon Aff. ¶¶ 3–6. In addition, Ms. Shannon states that the Mid–Atlantic region's headquarters are located in Shirlington, Virginia, although the "overall headquarters for the company is located in Boston, Massachusetts." Shannon Aff. ¶¶ 7–8. Finally, she notes that employment decisions regarding any of the named plaintiffs "would have ultimately been made in the Shirlington office, sometimes in consultation with the office located in Boston, Massachusetts[,]" and the employment records pertaining to the plaintiffs, as well as other employees of the Mid–Atlantic region, "are maintained in Shirlington, Virginia and/or Boston, Massachusetts." *Id.* ¶¶ 8–9.

In opposition, plaintiffs, although they do not directly refute Ms. Shannon's statements, present several arguments why venue in this district is proper. First plaintiffs argue that there is no requirement that all the named plaintiffs in a Title VII action meet the venue requirements. Plaintiffs' Opposition to Defendant's [sic] Motion to Dismiss Title VII Claims for Lack of Venue ("Pls.' Opp'n") at 2. Second, plaintiffs argue that

---

4. Defendants note in their reply that the affidavit they have submitted does not covert the present motion to dismiss into a motion for summary judgment. No such risk was present here. Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint on the basis of improper venue. In addition, it is only when filing a motion pursuant to Rule 12(b)(6) that a motion to dismiss "shall" be converted into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court ..." Fed.R.Civ.P. 12(b).

the allegation in the complaint regarding the defendants' "pattern and practice of discrimination ... [,including] 'failing to notify past and current qualified African American employees of job openings, concealing those job openings ...' and 'otherwise prohibiting qualified past and current qualified African American employees ... from advancement in the defendants' corporation[,]" satisfies Title VII's venue requirement because the practices complained of "occurred in the District of Columbia within the relevant time period." *Id.* at 4–5. As an example, plaintiffs detail an incident involving plaintiff Sheila Quarles who applied for a position in the defendants' McLean Gardens property, which is located in the District of Columbia. *Id.* at 5. Ms. Quarles allegedly contacted Heather Mulcahy, the property manager at McLean Gardens, about an announced vacancy and was told that the position had been listed in error only to later learn that a white female had been given the position. *Id.* at 5; Affidavit of Sheila Quarles ("Quarles Aff.") ¶ 6.

Both parties correctly note that whether this district is a proper venue for this Title VII action is determined by 42 U.S.C. § 2000e–5(f)(3), which provides, in part:

[A]n action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

The parties part ways, however, about whether this provision affords plaintiffs the right to pursue this action in this district. Plaintiffs argue that because plaintiff Quarles applied for a position in the District of Columbia, was denied that position, and would have worked here "but for the alleged unlawful employment practice," *id.*, this is the proper venue for the filing of her action. Plaintiffs then opine that because Quarles' case is properly venued here that all of the named class representatives are also properly before this Court because only one of the named plaintiffs must actually meet one of the venue requirements of the statute. Defendants maintain, to the contrary, that all of the named plaintiffs must meet at least one of the venue requirements of the statute for their cases to be filed in this district, but that even if only one named plaintiff is required to meet the statutory requirements, plaintiff Quarles' allegations do not suffice because her affidavit "does not reflect that any of the acts of discrimination actually occurred in the District of Columbia [and] because any decision relating to Ms. Quarles' status would have been made either in the regional office located in Shirlington, Virginia or [at] the overall company headquarters in Boston, Massachusetts." Defendants' Reply to Plaintiffs' Opposition to Motion to Dismiss Title VII Claims for Lack of Venue ("Defs.' Reply") at 3–4.

■ In ruling upon the defendants' motion to dismiss for lack of proper venue, the Court "accepts the plaintiffs['] well-pled factual allegations regarding venue as true, ... draws all reasonable inferences from those allegations in the plaintiffs['] favor, and ... resolves any factual conflicts in the plaintiffs['] favor.... The court, however, need not accept the plaintiffs['] legal conclusions as true." *James v. Booz–Allen, Hamilton, Inc.*, 227 F.Supp.2d 16, 20 (D.D.C.2002) (citation omitted).

The first issue the Court must decide is whether Ms. Quarles' allegations are sufficient to establish venue in this district. Drawing all reasonable inferences from the allegations in plaintiff's favor, the Court concludes that they do. Title VII's venue provision plainly permits an action to be maintained "in the judicial district in which the aggrieved person *would have worked* but for the alleged unlawful employment practice . . ." 42 U.S.C. § 2000e–5(f)(3) (emphasis added). Clearly, according to Ms. Quarles' allegations, if she had been offered the position she applied for, she would have worked at the defendants' McLean Gardens property, which defendants do not dispute is located in the District of Columbia. This is sufficient to establish that this district is the proper venue for the filing of plaintiff Quarles' action. *See Johnson v. Washington Gas Light Co.,* 89 F.Supp.2d 45, 47 (D.D.C.2000) (holding that venue under Title VII was proper in the District of Columbia where the record established that it was "*likely* that, had plaintiff received one of the positions he sought, he would have been assigned to work in the District of Columbia at some point.") (emphasis in original); *cf. Spencer v. Rumsfeld,* 209 F.Supp.2d 15, 18 (D.D.C.2002) (holding that venue was not proper in the District of Columbia under Title VII's venue statute where the defendant maintained that "even if it had promoted the plaintiff, he would have remained in Arlington, Virginia . . .").[5]

The second issue the Court must address is more difficult, namely, whether the remaining three named plaintiffs must independently satisfy the venue requirements of section 2000e–5(f)(3), or whether Ms. Quarles' allegations are alone sufficient to establish venue in this jurisdiction for all of the named plaintiffs. The defendants rely upon *United States v. Trucking Employers, Inc.,* 72 F.R.D. 98 (D.D.C.1976) (Bryant, J.), as support for their position that all of the named plaintiffs must individually satisfy the Title VII venue provision in order for venue to be proper in this district. In *Trucking Employers,* the court had certified a class of defendant trucking companies in a Title VII action filed by the United States against the companies for discrimination against black and "Spanish-surnamed persons involved in various phases of the industry." *Id.* at 99. Two of the defendants argued that they were not proper members of the defendant class and therefore the claims against them should be dismissed because they had not been properly served and, in any event, venue in the District of Columbia was not proper as to them. *Id.* In rejecting the defendants' claims, the court held that "[b]ecause class actions do not necessarily require the presence of a class member before the court for an adjudication of his/her rights and liabilities, venue

---

**5.** The court is cognizant of the fact that courts must determine Title VII venue issues based on a " 'commonsense appraisal' of how the events in question arose." *Spencer,* 209 F.Supp.2d at 18 (citations omitted). Therefore, "venue cannot lie in the District of Columbia when a 'substantial part, if not all, of the employment practices challenged in this action' took place outside the District even when actions taken in the District 'may have had an impact on the plaintiff's situation.' " *Darby v. Dep't of Energy,* 231 F.Supp.2d 274, 277 (D.D.C.2002) (citation omitted); *Spencer,* 209 F.Supp.2d at 18–19. At this juncture, the record does not establish that the substantial events pertaining to plaintiff Quarles all took place in a district other than the District of Columbia and, giving plaintiff the benefit of the inferences that can be drawn from the facts, the Court concludes that her claim that she applied for and would have, but for the defendants' alleged discrimination, worked in the District of Columbia, is sufficient to establish that venue in this district is proper.

restrictions are not determinative of the ability of the court to hear the action with respect to all members of the class." *Id.* at 100. Therefore, the "non-party members" did not have to be "personally before the Court, as long as the requirements of due process—in this context, primarily notice and representativeness of named class members—are afforded them." *Id.* at 99. Specifically pertaining to the defendants who had been named as part of a class, Judge Bryant stated that "the relevant venue question in such circumstances is whether venue is proper *as among the parties who have in fact been brought personally before the court as named parties to the action,* the parties representing and in effect standing in for the absent class members." *Id.* at 100 (footnote and citations omitted) (emphasis added). Because the two defendants who sought dismissal had not been personally brought before the court as named representatives of the class, Judge Bryant ruled that "lack of proper venue as to such absent class members [did] not impair the Court's ability to entertain the action and adjudicate the rights and liabilities of those absent class members." *Id.*

Plaintiffs argue that the language in *Trucking Employers* does not "mandate[ ] ... [t]he notion that all named plaintiffs must meet the venue requirement ..." Pls.' Opp'n at 2. However, the *Trucking Employers* court explicitly stated that the relevant venue inquiry in a Title VII action is whether venue among the "named parties to the action" is proper. The Court interprets this language to mean that the parties who are before the court, *i.e.,* the named parties, must each satisfy the venue requirements of the statute. To conclude otherwise would be to be to ignore the language contained in the *Trucking Employers* decision that venue

must be determined "among" the parties who have been "personally brought before the court as *named parties* to the action." *Id.* (emphasis added). Further, important to the *Trucking Employers* decision was the fact that the defendants who argued that venue as to them was not proper in this district had not been named as representatives of the class. And as the court stressed several times throughout its opinion, "class suits may be maintained without the personal appearance of class members ..." and therefore, venue need not be established "as to such *absent* class members ..." *Id.* at 100 (emphasis added).

The Court's interpretation of the *Trucking Employers* decision finds support in *Dukes v. Wal-Mart Stores, Inc.,* No. Civ.A. 01–2252, 2001 WL 1902806, at *2 (N.D.Cal. Dec.3, 2001), cited by the defendants, where the court faced a nearly identical issue as the one presented in this case. In *Dukes,* the six named class representatives sought to bring a class action pursuant to Title VII in the Northern District of California. *Id.* at *1. Two of the named plaintiffs resided in California; the others resided in several other states. *Id.* The defendant's principal place of business was in Arkansas. *Id.* As in this case, the plaintiffs argued that because at least one of the named plaintiffs was able to establish that venue was proper in the Northern District of California, venue was therefore proper for all of the class representatives. *Id.* The defendants, relying in large part on the decision in *Trucking Employers,* argued that each of the named plaintiffs was required to meet the venue requirements of section 2000(e)–5(f)(3) of Title VII in order for venue to be proper in the Northern District of California. *Id.* at *2.

The *Dukes* court agreed with the defendants. It began its analysis with a discussion of the *Trucking Employers* decision and concluded that

[w]hile the opinion does not explicitly state that each named plaintiff must individually satisfy venue, that the *Trucking Employers* court espoused such a proposition is implicit in its holding. In concluding that the status of absent class members was not material to the venue determination in the case, the district court necessarily held that only named representatives of the class were considered for venue purposes.... Thus, prior to finding immaterial the venue status of the absent class members, the *Trucking Employers* court made clear that the venue status of the named plaintiffs 'represent[ ] and in effect stand[ ] in for the absent class members.' ... *Afortiori,* had venue been improper as to the named plaintiffs, the *Trucking Employers* court would have been without jurisdiction, and would have been without authority to compel the trucking companies to remain as defendants.

*Id.* at *3.

The *Dukes* court went on to hold that the approach enunciated in *Trucking Employers* was the practical approach for determining the issue of venue in a Title VII case. The court stated:

Requiring that every named plaintiff in a class action satisfy venue makes good judicial sense in that it is consistent with a principle well settled in case law.... Accordingly, the Court declines [p]laintiffs' invitation and adopts the reasoning expressed in *Trucking Employers,* finding, as a general rule, that, in class action settings, each plaintiff must individually satisfy venue.

*Id.* at *5 (citing *Trucking Employers,* 72 F.R.D. at 100). Other cases cited by the *Dukes* court also support its holding. *See, e.g., Smith v. Lyon,* 133 U.S. 315, 318, 10 S.Ct. 303, 33 L.Ed. 635 (1890) (holding that the circuit court properly dismissed an action for want of jurisdiction pursuant to an early venue statute and citing with approval the proposition enunciated in *Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806), that "where the interest is joint[,] each of the persons concerned in that interest must be competent to sue, or liable to be sued in those courts.") (internal quotation marks omitted); *McManus v. Washington Gas Light Co.,* No. Civ.A. 90–3169, 1991 WL 222345, at *3 (D.D.C. Oct.15, 1991) (holding that the claims of those plaintiffs that "involve[d] employment practices in [the defendant's] Springfield, Virginia office and prospective job opportunities in the Virginia office[,]" would be dismissed for lack of proper venue).

As support of their argument that all named plaintiffs do not have to meet the venue requirements, plaintiffs rely on *Exxon Corp. v. Federal Trade Comm'n,* 588 F.2d 895 (3d Cir.1978). In *Exxon,* the court held that venue was proper in Delaware because "at least one plaintiff" resided there. *Id.* at 899. However, the court decided that issue in the context of a lawsuit brought pursuant to 28 U.S.C. section 1391(e), which provides that venue in civil actions brought against an officer or agency of the United States may be brought in any judicial district where a defendant involved in the action resides; the cause of action arose; real property involved in the action is located; or where the plaintiff resides if the case does not involve real property. *See Exxon,* 588 F.2d at 898; 28 U.S.C. § 1391(e). The *Exxon* court held:

[R]equiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. The language of the statute itself mandates no such narrow construction.

There is no requirement that all plaintiffs reside in the forum district.

*Id.* at 898–899. *Exxon* did not involve claims filed pursuant to Title VII nor, more importantly, did it involve a class action lawsuit. In addition, plaintiffs rely on *Jewish War Veterans v. United States*, 695 F.Supp. 1, 2 (D.D.C.1987), a case where the "crux of the defendants' challenge to venue ... turn[ed] ... on whether 'real property is involved in the action' so as to preclude plaintiffs from invoking section 1391(e)(4)." The *Jewish War Veterans* court noted, in a footnote, that "[f]or venue to be proper, only one of the plaintiffs need satisfy the residency requirement of section 1391(e)(4)." *Id.* at 2 n. 3 (citations omitted).

The *Exxon* and *Jewish War* cases are inapposite to the present situation. Both cases involved the venue provision of section 1391(e), which differs substantially from the venue provision at issue here. The Title VII venue provision "provides four judicial districts in which employment discrimination suits may be filed." *Stebbins v. State Farm Mutual Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C.Cir.1969) (per curiam). Pursuant to section 20005–5(f)(3) of Title VII, it is only if venue is not proper in a district where the unlawful practice occurred, where the employment records are maintained and administered, or where the complainant would have worked absent the alleged discrimination, that an action my be brought in the judicial district where the defendant has its principal place of business. "Thus, the intent of Congress to limit venue to the judicial district concerned with the alleged discrimination seems clear." *Stebbins*, 413 F.2d at 1102.

In contrast, under section 1391(e), an action may be brought in any "judicial district in which ... a defendant in the action resides," a far less restrictive requirement than section 2000e–5(f)(3)'s requirement that venue is proper only where the defendant has its principal place of business, and then only when one of the other three venue predicates cannot be satisfied. *Compare* 28 U.S.C. § 1391(e) *with* 42 U.S.C. § 2000e–5(f)(3); *see also Stebbins*, 413 F.2d at 1103. As the *Dukes* court stated when rejecting the plaintiffs' reliance on *Exxon* in that case, section 1391(e) was passed by Congress "to rectify specific venue and jurisdictional constraints, and [Congress] expressly indicated that the section only be applied in ... limited circumstances ..." 2001 WL 1902806, at *6. Further, because section 1391 is a "highly-specialized venue provision aimed at lawsuits involving governmental entities[,]" *id.*, there is little, if any comparison to Title VII's venue provision because Title VII authorizes lawsuits against both governmental and private entities. *See id.* ("*Exxon* makes clear that in actions against the federal government, Section 1391(e) mandates a broader view of venue and jurisdictional concerns than those implicated when dealing with venue provisions that apply to lawsuits involving private parties.... Plaintiffs have failed to cite any legislative history that supports their construction of Title VII's special venue statute.").

The *Dukes* court also similarly rejected the plaintiffs' claims that Title VII's venue provision should be interpreted broadly to permit plaintiffs to choose the forum they determined to be most convenient. *Id.* at *7. The court held that the position advanced by plaintiffs was not evident in Title VII's language or legislative history and noted that the plaintiffs had failed to provide any evidence to support the proposition that Congress' intent was to "abrogate the generally accepted rule regarding venue in class actions." *Id.; see also Stebbins*, 413 F.2d at 1102 ("The venue of

the right of action here in suit was limited by the statute which created the right[,]" and stating that Congress' intent was "clear" that venue in Title VII actions be limited to "the judicial district concerned with the alleged discrimination ..."); *Amirmokri v. Abraham*, 217 F.Supp.2d 88, 90 (D.D.C.2002) ("Numerous judges of this Court have held that the special venue provision of Title VII, not 28 U.S.C. § 1391(e), applies in Title VII employment discrimination cases ... To reach any other conclusion would effectively mean that all employment discrimination suits against the government would have to be brought in this Court merely because the headquarters of most government agencies are here ... [,which] is not what Congress intended.") (citations omitted); *McManus*, 1991 WL 222345, at *4 ("Congress has expressly limited the federal courts that can hear Title VII cases, and thus the exercise of a judge-made exception would fly in the face of clear Congressional will.").

Similarly in this case, plaintiffs do not present any persuasive authority that would support a conclusion that Congress intended that Title VII's venue requirements should be broadly construed to permit a class representative to bring suit in a jurisdiction where he cannot personally satisfy the venue requirements of the statute. As the court stated in *Trucking Employers*, "[t]he central function of venue generally is to regulate the forum in which a party may appear or may force another party to appear personally, in a suit in which the court would otherwise have jurisdiction.... Venue is therefore intimately connected to and predicated upon the personal appearance of the party." 72 F.R.D. at 100. It is therefore logical that plaintiffs who are named as representatives of a class action be required to satisfy the venue requirements of the statute because they are the parties who have brought themselves before the court and are the persons over whom the court must have jurisdiction. Accordingly, because plaintiffs Rogers, Thomas and Bellamy cannot satisfy the venue requirements of section 2000e–5(f)(3), their Title VII claims will be dismissed unless for reasons that will be addressed below, dismissal at this time is not appropriate.[6]

■ The final issue the Court must address regarding the defendants' venue motion is whether this matter should be transferred to another federal district. Once the court has determined that venue is not proper in its district, it may dismiss "or, if it be in the interest of justice, transfer such case to any district or divi-

6. The Court notes that plaintiffs also sought to invoke 42 U.S.C. § 1981 as a basis for venue in this matter for the first time in their opposition to the dismissal motion. First, whether plaintiffs can amend their complaint through a statement in their opposition is a dubious proposition at best. However, even if the Court permitted such an amendment, this would not necessarily save the claims of those named plaintiffs who the Court has concluded may not raise their claims in this district. "Indeed, the greater weight of authority suggests that when a plaintiff brings a Title VII action under both 42 U.S.C. §§ 1981 and 2000e–5, the narrower venue provision of section 2000e–5(f)(3) controls." *James*, 227 F.Supp.2d at 21. In *James*, Judge Urbina of this Court also noted that a minority of courts determine venue by "evaluating which of the two federal claims is 'primary' and applying the venue provision of the primary claim." *Id.* However, even adopting the minority position, *arguendo*, "the court would still conclude that plaintiffs['] 42 U.S.C. § 2000e claim[s][are] the primary claim[s] asserted in the complaint, thereby applying the Title VII venue provision in determining how to rule on the defendant's instant motion to dismiss." *Id.* at 21–22. Plaintiffs do not address this issue at all in their opposition; nor do they present any arguments or legal authority that would support a finding that venue, although improper under Title VII, is proper under section 1981.

sion in which it could have been brought." 28 U.S.C. § 1406 (2000); *see also James*, 227 F.Supp.2d at 24–25; *Spencer*, 209 F.Supp.2d at 17; *Dukes*, 2001 WL 1902806, at *8; *McManus*, 1991 WL 222345, at *4. Again, the *Dukes* decision is instructive on this point. In *Dukes*, the court concluded that because two of the six named class representatives met the Title VII venue requirements, it would exercise the discretion granted it pursuant to 28 U.S.C. § 1406 and "dismiss the improperly venued plaintiffs pursuant to Rule 21,[7] allowing the case and the California plaintiffs to remain if they so choose." *Id.* at *9. This result, the court held, was appropriate because "[d]ismissal or transfer of the entire action would be too harsh a penalty since two of the six plaintiffs are properly venued here." *Id.*

In this case, however, because the Court holds that one of the named plaintiffs (Quarles) has filed a Title VII claim that is properly venued in this district, but has deferred deciding whether this action will

be certified as a class, the Court will also defer ruling on whether the claims of plaintiffs Rogers, Bellamy and Thomas as named parties should be dismissed while permitting them to remain as unnamed members of the class if class certification is granted,[8] or whether their claims should be transferred to the appropriate federal district or districts where their claims could have been brought. *See Spencer*, 209 F.Supp.2d at 17 (the "interests of justice .... [g]enerally ... instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them[,]") (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)).[9]

## C. *Defendants' Motion to Dismiss Counts I, II, V, and VI (Title VII Claims)*

██ In their third motion, the defendants seek dismissal, pursuant to 12(b)(1) and 12(b)(6), of counts one (the class' claims), count two (plaintiff Sheila Quarles' age discrimination claim),[10] count five

---

7. Federal Rule of Civil Procedure 21 provides:

 Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

8. *See Dukes*, 2001 WL 1902806, at *8–10; *Trucking Employers*, 72 F.R.D. at 100; *accord Appleton Electric Co. v. Advance–United Expressways*, 494 F.2d 126, 140 (7th Cir.1974) (non-Title VII class action case); *Dunn v. Sullivan*, 758 F.Supp. 210, 216 (D.Del.1991) (same).

9. In Plaintiffs' Opposition to Defendant's [sic] Motion to Dismiss D.C. Human Rights Act Claims at 2, discussed *infra* at 27, plaintiffs allege that Ms. Rogers' Equal Employment Opportunity Complaint ("EEOC") complaint specifically avers that she applied for the position of Senior Property Manager, which was located in the District of Columbia, at McLean Gardens, and which was denied to her

sometime during May 1, 2001, and June 27, 2001. Plaintiffs presented no evidence regarding this alleged claim in their opposition to defendants' motion to dismiss the Title VII claims for lack of venue. If in fact there are allegations pertaining to any of the other named plaintiffs that would support a finding that venue is proper in this district, the Court will reconsider its decision that their Title VII claims must be either dismissed or transferred, if an appropriately filed amended complaint is filed. However, the Court notes that in her EEOC filed charge of discrimination, Ms. Quarles specifically listed the defendants' District of Columbia location as the discriminating employer, whereas Ms. Rogers listed the defendants' Mechanicsville, Virginia location as the discriminating employer. *Cf.* Plaintiffs' Opposition to Defendant's [sic] Motion to Dismiss D.C. Human Rights Act Claims, Exhibits 2 and 3.

10. Defendants mistakenly seek to dismiss count two of plaintiffs' complaint. However, count two of the complaint contains allegations pertaining to plaintiff Sheila Quarles'

(plaintiff Ebony Thomas' race and gender discrimination claims) and count six (plaintiff Anthony Bellamy's race discrimination claims). In light of the Court's conclusion that plaintiffs Thomas', Rogers', and Bellamy's Title VII claims, wherein they are named parties, will have to either be dismissed or transferred to another district or districts, depending upon how it resolves the class certification issue,[11] it will only address the defendants' argument that plaintiff Quarles' Title VII claims must be dismissed because she failed to exhaust her administrative remedies. The basis for defendants' exhaustion challenge is that this action was filed prematurely. Pursuant to 42 U.S.C. Section 2000e–5(f)(1):

> If a charge ... filed with the Commission ... is dismissed by the Commission, or within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section ... the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ...

Defendants note that Ms. Quarles filed a complaint with the Equal Employment Opportunity Commission ("EEOC") "on or about April 17, 2002." Defendants' Motion to Dismiss Counts I, II, V and VI Relating to Title VII Claims ("Defs.' Title VII Mot.") at 4; Defs.' Title VII Mot. Ex. A (Charge of Discrimination filed by Ms. Sheila L. Quarles, dated April 18, 2002). Thereafter, "Ms. Quarles sought and received a notice of right to sue dated August 23, 2002." Defs.' Title VII Mot. at 4; Ex. B (Dismissal and Notice of Rights from EEOC dated August 23, 2002). Defendants argue that, pursuant to the District of Columbia Circuit's holding in *Martini v. Federal National Mortgage Assoc.*, 178 F.3d 1336 (D.C.Cir.1999), *cert. dismissed* 528 U.S. 1147, 120 S.Ct. 1155, 145 L.Ed.2d 1065 (2000), the EEOC must retain a charge of discrimination throughout the entire pendency of the statutory 180–day period and, because Ms. Quarles' charge was only before the EEOC for 128 days, her complaint was prematurely filed with this Court and the EEOC must consider her claims "for at least an additional 52 days." Defs.' Title VII Mot. at 5. Thus, defendants opine that the Court is without jurisdiction to entertain plaintiff Quarles' complaint.

Plaintiffs, in opposition, argue that because Ms. Quarles has also filed a claim pursuant to the Age in Discrimination Employment Act, 29 U.S.C. § 621, which has a 60 day waiting period before a civil ac-

---

claims of discrimination on the basis "of her age in violation of 29 U.S.C. 623." Compl. ¶ 33. Count three contains the allegations regarding plaintiff Quarles' race and gender discrimination claims. It appears that defendants seek to dismiss plaintiff Quarles' Title VII race and gender discrimination claims because the basis for their dismissal request rests on the fact that plaintiff Quarles filed her lawsuit prior to the expiration of Title VII's 180 day filing period due to the fact that her right to sue letter was issued after the EEOC had her claim before it for only 128 days. Defendants' Motion to Dismiss Counts I, II, V and VI Relating to Title VII Claims ("Defs.' Title VII Mot.") at 5.

**11.** Because the Court has determined that venue is proper in this district regarding plaintiff Quarles' claim, and because it has declined to certify the class at this time, the defendants are at liberty to renew their motion to dismiss the claims concerning the class allegations once a request for class certification is submitted to the Court. This course is being taken by the Court at this juncture because the class has not been properly defined and the Court would therefore have to engage in speculation to address the issues raised in defendants' motion pertaining to the class.

tion may be commenced, that "Ms. Quarles was permitted to file [a] claim in court on or after June 17, 2002, 60–days following her formal EEOC complaint." Plaintiffs' Opposition to Defendants' Motion to.Dismiss Counts I, II, V, and VI Relating to Title VII Claims ("Pls.' Title VII Opp'n") at 6. The Court need not address plaintiffs' argument because it concludes that plaintiff Quarles has properly exhausted her Title VII administrative remedies.

In *Martini,* the District of Columbia Circuit Court dismissed, without prejudice, the action of a Title VII complainant who had received a right to sue letter, at her request, only twenty one days after filing her complaint with the EEOC. 178 F.3d at 1339. The court stated that the language of section 2000e–5(b) of Title VII, which provides that the EEOC "shall" investigate charges of discrimination and "shall make a reasonable cause determination 'as promptly as possible ... [,]'" evidenced Congress' intent that the "Commission's duty to investigate is both mandatory and unqualified." *Id.* at 1346. The court held that the language of section 2000e–5(b) requires that the EEOC investigate or attempt to investigate each charge that is presented to it, and that the "power to authorize early private suits inevitably and impermissibly allows the EEOC to relax its aggregate effort to comply ·with its statutory duty to investigate every charge filed ..." *Id.* at 1347.

However, the circumstances presented to the *Martini* court were critically distinguishable from the facts here. In *Martini,* the premature right to sue letter terminated the EEOC's statutory duty to investigate the plaintiff's claims. before it conducted an investigation. *See id.* at 1346 ("[A]n early right-to-sue notice typically terminates EEOC investigation of the charge ... precisely what happened in [*Martini* ]"). In this case, the Dismissal and Notice of Rights issued by the

EEOC indicates that the Commission was closing its file regarding plaintiff Quarles' charge because it had *already completed an investigation* and concluded that Ms. Quarles' charge did not establish a statutory violation. Specifically, the notice provided, in part:

The EEOC issues the following determination: *Based upon its investigation,* the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

Defs.' Title VII Mot. Ex. B (EEOC Dismissal and Notice of Rights dated August 23, 2002) (emphasis added). In addition, the EEOC's notice to plaintiff indicated that she had ninety days "from [her] receipt of this Notice" to file a lawsuit. *Id.* Therefore, in this case, unlike the situation in *Martini,* the EEOC stated that it had conducted an investigation of the plaintiff's claims, determined there was no statutory violation, and dismissed plaintiff's charge of discrimination.

In a case somewhat analogous to the present situation, but with even less compelling facts and which neither party cited, Judge Robertson of this court reached the same conclusion this Court will reach. *See Tesfaye v. Carr Park, Inc.,* 85 F.Supp.2d 37 (D.D.C.2000). In *Tesfaye,* the plaintiff had filed a charge of discrimination with the EEOC on April 20, 1999. *Id.* at 38. The EEOC issued the plaintiff a "Dismissal and Notice of Rights" on June 28, 1999, sixty-nine days later. *Id.* In this document, the EEOC indicated that plaintiff's claims were being dismissed and that plaintiff had ninety days to file his claim in court. *Id.* Judge Robertson noted that it was "unclear" from the documents provided by the EEOC "what investigation, if any, the EEOC performed." *Id.* However,

analyzing the *Martini* decision and the statutory language contained in section 2000e–5(f)(1), the court concluded that permitting the plaintiff to proceed with his complaint before the court was not in violation of *Martini*. The *Tesfaye* court stated:

> The timing of the complaint and of the EEOC's right to sue letter do not offend the rationale of the *Martini* decision, which acknowledges that 'the statute . . . authorizes a complainant to sue within 180 days *if the EEOC dismisses the charge*. . . . Nor is the plaintiff's pre–180 day filing at odds with *Martini*'s public policy rationale: *Martini* was concerned that early authorization of private suits 'undermines [the EEOC's] statutory duty to investigate every charge filed,' . . . but here the EEOC *apparently investigated* the plaintiff's claim and simply concluded before 180 days had passed that it lacked merit.

*Id.* at 38 (emphasis in original and emphasis added).[12]

■ Unlike *Tesfaye*, in this case the EEOC did not just *appear* to have investigated plaintiff's claims, but specifically stated that her claims *had been investigated* and that it had determined that the claims did not have merit, and instructed plaintiff that she had ninety days from the date of the issuance of its notice to file this action. Defendant does not argue that the

EEOC did not actually investigate plaintiff's discrimination charge, nor does plaintiff have an affirmative duty to prove that the EEOC, in fact, investigated her charge of discrimination. *See Hill v. Washington Metro. Transit Auth.*, 231 F.Supp.2d 286, 293 (2002) (Walton, J.) ("While the *Martini* Court recognized that 42 U.S.C. § 2000e–5(b) states that the EEOC 'shall' investigate the charges, and that this duty is 'mandatory and unqualified[,]' it is clear that the Court did not impose an affirmative burden upon a plaintiff who has filed a civil suit after the expiration of the 180 day period to show that the EEOC actually carried out its legislative mandate."). Because the EEOC investigated this matter and Title VII provides that once a charge is dismissed by the Commission, the plaintiff has ninety days after the receipt of the notice of dismissal to file her lawsuit, the Court concludes that the issuance of the Dismissal and Notice of Rights and the timing of plaintiff's filing of her complaint[13] did not violate the mandate of *Martini*. Defendants' motion to dismiss plaintiff Quarles' Title VII claims is therefore denied.

### E. *Defendants' Motion to Dismiss Claims Based on the District of Columbia Human Rights Act*

Finally, the defendants seek to dismiss, pursuant to Rule 12(b)(1), the claims of

---

**12.** Judge Robertson certified his case for an interlocutory appeal of his ruling in *Tesfaye* "[b]ecause the correct application of *Martini* . . . involves a 'controlling question of law as to which there is substantial ground for difference of opinion . . .'" (citing 28 U.S.C. § 1292(b)). The appeal was subsequently dismissed by the District of Columbia Circuit. *See Carr Park, Inc. v. Tesfaye*, 229 F.3d 1192 (D.C.Cir.2000).

**13.** The fact that plaintiff Quarles filed her initial complaint on June 28, 2002, prior to the receipt of her notice of dismissal, does not bar her action at this time. As plaintiffs correctly note, "[r]eceipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court." *Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983) (citations omitted). *See also Perry v. Beggs*, 581 F.Supp. 815, 816 (D.D.C.1983) (holding that "receipt of a right-to-sue notice by [the plaintiff] cured her failure to initially satisfy the condition precedent of awaiting the receipt of that letter and therefore this Court has jurisdiction to hear her claim.").

plaintiffs Quarles and Rogers made pursuant to the District of Columbia Human Rights Act ("DCHRA"), D.C.Code §§ 2-1401.01—2-1411.06 (2001). Defendants argue that plaintiffs Quarles and Rogers cannot assert a claim pursuant to the DCHRA because the statute contains a one year statute of limitations and requires that the act of discrimination occurred in the District of Columbia. Defendants' Motion to Dismiss Claims Based on District of Columbia Human Rights Act ("Defs.' DCHRA Mot.") at 2. In regards to Ms. Rogers' claims, defendants state, as supported by Ms. Shannon's affidavit, that Ms. Rogers "was employed exclusively in the property known as Windsor at Hunter's Woods located in Mechanicsville, Virginia from April 24, 2000 through the date of her resignation on June 27, 2001." *Id.* at 3. First, the defendants note that the complaint fails to allege where or when the alleged discriminatory acts occurred. *Id.* Second, defendants argue, supported by the affidavit of Ms. Shannon, that since at least May 2000, Ms. Quarles worked exclusively in the defendants' Windsor Villa Apartments, which are located in Rockville, Maryland and Ms. Rogers was employed exclusively in Virginia. *Id.* Therefore, the defendants maintain that because Ms. Quarles and Ms. Rogers were not "employed in the District of Columbia during the one year period prior to their initiating the present lawsuit, there is no basis for a claim under District of Columbia law." *Id.* at 3.

In opposition, plaintiffs argue that the filing of an administrative appeal tolled the DCHRA one year statute of limitations and, in any event, Ms. Quarles was discriminated against within one year of the filing of this action, when she applied for

and was denied a position at the defendants' McLean Gardens property, located in the District of Columbia.[14] Plaintiffs' Opposition to Defendant's [sic] Motion to Dismiss D.C. Human Rights Act Claims ("Pls.' Opp'n") at 2. In addition, plaintiffs argue that Ms. Rogers, "in her EEOC complaint ...[,] specifically refers to the position of Senior Property Manager that she was denied during the period between May 1, 2001, and June 27, 2001[,] [which] ... was located in the District of Columbia, at McLean Gardens." *Id.*

 Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a complaint if the Court "lack[s] jurisdiction over the subject matter ..." Under this rule, "the plaintiff bears the burden of establishing that the court has jurisdiction." *Fowler v. District of Columbia,* 122 F.Supp.2d 37, 39–40 (D.D.C.2000) (citation omitted). The rule also imposes "an affirmative obligation [on the court] to ensure that it is acting within the scope of its jurisdictional authority ... [and for that] reason, the '[p]laintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than on a 12(b)(6) motion for failure to state a claim." *Id.* at 40 (citations omitted). Therefore, the Court may consider matters outside the pleadings to assure itself that it in fact has jurisdiction over this case. *Id.*

 Pursuant to D.C.Code § 2-1403.16(a) (2001):

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages ... A private cause of action pursuant to this chapter shall be filed ... within one

---

14. According to Ms. Quarles' affidavit she learned of the fact that she was denied the position she sought "on or after July 2001," and her complaint in this action was filed on July 28, 2002. Pls.' Opp'n, Ex. 1 (Quarles Aff.) ¶ 6.

year of the unlawful discriminatory act, or the discovery thereof . . .

Defendants maintain that plaintiffs cannot allege a claim pursuant to this statutory provision because they failed to do so within the time permitted by the act and because they were not employed in the District of Columbia. Defendants cite *Matthews v. Automated Business Systems & Services, Inc.*, 558 A.2d 1175 (D.C.1989), for the proposition that because "neither Ms. Quarles nor Ms. Rogers was employed in the District of Columbia during the one year period prior to their initiating the present lawsuit, there is no basis for a claim under District of Columbia law." Defs.' DCHRA Mot. at 3. Specifically, defendants rely on footnote 8 of the *Matthews* opinion where the court stated, in dicta, that it "assume[d], without deciding, that the District of Columbia Human Rights Act does not apply to acts occurring outside the District." 558 A.2d at 1180 n. 8 (citations omitted). However, further analysis of the *Matthews* case actually supports the plaintiffs' positions.

In *Matthews,* the plaintiff had been employed by a District of Columbia corporation that had its principal place of business in Maryland. *Id.* at 1177. Matthews alleged in count one of her complaint that she was the victim of "unlawful discrimination based on her age and sex in violation of the Human Rights Act." *Id.* The defendants filed a motion to dismiss count one of Matthews' complaint pursuant to District of Columbia Superior Court Rule of Civil Procedure 12(b)(1),[15] arguing that the court did not have subject matter jurisdiction over Matthews' DCHRA claims because, as stated in affidavits of the company's personnel, the "substantial part" of

the company's business was in Maryland and "its activities in the District of Columbia were limited." *Id.* at 1178. In addition, the *Matthews* defendants maintained that the plaintiff's "employment contracts were negotiated, executed, and substantially performed in Maryland and that Matthews was assigned to work in Maryland, where her supervisors, her personnel records and her business phone were all located." *Id.* In opposition, Matthews submitted her own affidavit in which she stated that, contrary to the defendants' assertions, the company performed a substantial amount of their work in the District, that "between forty and sixty percent of her work was performed in the District . . . [,]the terms of her employment were substantially negotiated within the District and that some of the acts of alleged discrimination occurred in the District." *Id.* The District of Columbia trial court in *Matthews* granted the employer's motion to dismiss the complaint, holding that "because Matthews' 'actual place of employment was at all times in Maryland,' there was not a sufficient nexus between Matthews and the District of Columbia to permit the court to entertain an action under the Human Rights Act." *Id.*[16]

The District of Columbia Court of Appeals reversed the ruling of the trial court. The court rejected the trial court's interpretation of *Honig v. District of Columbia Office of Human Rights*, 388 A.2d 887 (D.C.1978) as "requiring persons who sue under the [District of Columbia] Human Rights Act to have a sufficient nexus with the District in order to provide a District of Columbia court with jurisdiction . . ." *Id.* at 1181. The court stated that "[t]he purpose of the Human Rights Act is 'to

---

**15.** This Rule is the local equivalent of federal rule 12(b)(1).

**16.** The trial court in *Matthews* dismissed the remaining counts of the complaint on the ground of *forum non conveniens.* 558 A.2d at 1178.

secure an end *in the District of Columbia* to discrimination for any reason other than that of individual merit . . .'" *Id.* at 1180 (citing statute) (emphasis in original). Therefore, the court concluded that:

> [i]f the events alleged in Matthews' complaint occurred in the District of Columbia, they are subject to scrutiny under [the Act] regardless of whether her 'actual place of employment' was in Maryland, the District or both. Thus, the critical factual issue bearing on jurisdiction is *whether these events took place in the District*. . . . Matthews' affidavit says that some of them did, but [defendants'] affidavits do not address this question.

*Id.* (emphasis added). The *Matthews* court therefore remanded the case to the trial court for reconsideration of its dismissal of the complaint "in light of [its] holding that subject-matter jurisdiction exists under count one." *Id.* at 1182.

The ruling in *Matthews* establishes that the most important factor in determining whether a court has subject matter jurisdiction over a claim filed pursuant to the DCHRA is not whether the plaintiff was actually employed in the District of Columbia but whether the alleged discriminatory acts occurred in the District. *See id.* at 1180 ("Most significantly, [plaintiff Matthews] alleges that some of the acts of sex discrimination alleged in the complaint occurred in the District of Columbia.").

In this case, in light of the facts and Ms. Quarles' allegations, the Court concludes there is a sufficient basis for Ms. Quarles to sustain her claim under the DCHRA. First, Ms. Quarles' affidavit alleges that she applied for and was denied a position at the defendants' Washington, DC property. Defs.' Title VII Mot. Ex. A. Second, in the EEOC complaint she filed, Ms. Quarles states that the employer who discriminated against her was the "Village at McLean Gardens [located at] 3401 38th

Street, N.W., Washington, DC 20016[,]" in addition to the defendants' Boston, Massachusetts location. *See* Defs.' Title VII Mot. Ex. A (Ms. Quarles' Charge of Discrimination). Thus, according to Ms. Quarles' allegations, she was discriminated against by the defendants' decision not to hire her for a position in the District of Columbia and therefore, contrary to defendants' assertions, discrimination occurred in the District of Columbia. *See Martin v. Holiday Universal Inc.*, No. Civ.A. 90-1188, 1990 WL 209266, at *4 (D.Md. Oct.3, 1990) (denying defendants' motion to dismiss plaintiffs' DCHRA claims on the basis of defendants' arguments that plaintiffs had not been hired, employed or discriminated against in the District of Columbia. The court, relying on *Matthews*, held that "each plaintiff alleges that he or she was discriminated against by the refusal to hire, transfer or promote them into facilities located in the District of Columbia. . . . The fact that defendants made the discriminatory decisions outside of Washington, D.C., and that the plaintiffs applied for employment outside of Washington, D.C., will not shield defendants from liability . . . . The discriminatory act in this case consisted of not transferring or hiring plaintiffs in or to the District of Columbia facilities.") (citing *Green v. Kinney Shoe Corp.*, 704 F.Supp. 259, 260 (D.D.C.1988)); *Green*, 704 F.Supp. at 260 (denying defendants' motion for summary judgment on plaintiff's DCHRA claims where plaintiff applied in Maryland for a position in the District of Columbia and the decision not to hire him was made in Maryland. "The broad language of the [Human Rights] Act leads the Court to understand that . . . [it] was intended to cover all discrimination concerning jobs located in the District of Columbia, even if the application and decision to discriminate were made outside the District. . . . Two of the jobs at issue in the instant case . . . were clearly jobs to be

performed primarily, if not exclusively, in the District of Columbia."). As the purpose of the DCHRA is "to secure an end *in the District of Columbia* to discrimination for any reason other than that of individual merit ...[,]" D.C.Code § 2.1401.01, the Court cannot conclude that it is without subject matter jurisdiction in this case where plaintiff claims to have applied for and been denied a position in the District of Columbia based on proscribed discrimination.

■ However, regarding the statute of limitations challenge to Ms. Quarles' DCHRA claims, she states in her affidavit that she learned in July 2001 that a white employee was given the position she had applied for and the defendants do not refute this statement. If, in fact, it is proven that Ms. Quarles allegedly learned about the position being given to a white employee on a date earlier than July 28, 2001, then it is possible that her complaint was filed untimely under the DCHRA. Therefore, because the Court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority[,]" *Fowler,* 122 F.Supp.2d at 40, the Court declines to definitively rule at this time on defendants' motion to dismiss plaintiff Quarles' DCHRA claims pending limited discovery being conducted concerning when she learned that a white employee was purportedly given the position she sought.

■ Similarly, the Court must defer its ruling regarding the claims of plaintiff Rogers, albeit for a different reason. Plaintiffs have not submitted an affidavit from Ms. Rogers that confirms that, similar to Ms. Quarles, she applied for a position at the defendants' District of Columbia property and was denied the position for a discriminatory reason. In fact, in her EEOC complaint, Ms. Rogers listed the defendants' "Windsor–Hunter's Woods Apts. [property], [located at] 7438 Tack Room Drive, Mechanicsville, [Virginia,]" as the sole discriminating employer. Defs.' Title VII Mot. Ex. C (Charge of Discrimination filed by Tammy E. Rogers). Although plaintiff Rogers states in her EEOC complaint that she applied for the position of "Senior Property Manager," the only allegation that this position was located in the District of Columbia is made in plaintiffs' opposition to defendants' motion to dismiss plaintiffs' DCHRA claims, which the Court concludes is inadequate proof that it can exercise subject matter jurisdiction over plaintiff Rogers' DCHRA claim, especially where her EEOC complaint supports defendants' argument that no discrimination against Ms. Rogers occurred in the District of Columbia. *See Prakash v. American Univ.,* 727 F.2d 1174, 1179–80 (D.C.Cir.1984) (remanding the issue of whether the district court had subject matter jurisdiction over plaintiff's claims where the district court had determined "simply on the paper record before it," that there was not diversity of citizenship between the parties. "When subject matter jurisdiction is questioned, the court must, of course, satisfy itself of its authority to hear the case, and in so doing, it may resolve factual disputes. The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction, and normally it may rely upon written or oral evidence. The court must, however, afford the non-moving party 'an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'") (citations omitted); *see also Grand Lodge of the Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001) ("Because subject matter jurisdiction focuses on the court's power to hear the plaintiff's claims, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure

that it is acting within the scope of its jurisdictional authority.") (citation omitted). Therefore, the Court will defer ruling on the issue of whether plaintiff Roger's DCHRA claims should be dismissed or transferred so that the parties may conduct limited discovery on the issue of whether Ms. Rogers was allegedly discriminated against in the District of Columbia and an evidentiary hearing can be conducted on this issue, if a hearing becomes necessary. *See Matthews,* 558 A.2d at 1180 ("In some cases … a court may be required to provide a plaintiff with a hearing on the issue of jurisdiction, especially if the evidence presented in the affidavits is not sufficient, or if 'the facts are complicated and testimony would be helpful.'") (citations omitted).

An order consistent with the Court's ruling accompanies this Memorandum Opinion.

### ORDER

For the reasons set forth in the Memorandum Opinion that accompanies this Order, it is on this 10th day of March, 2003, hereby

**ORDERED** that a ruling on defendants' Motion to Dismiss Class Action Claims [# 5] is deferred. It is further

**ORDERED** limited discovery shall commence on March 4, 2003, and conclude by May 2, 2003. Discovery at this time shall be limited to plaintiffs class action allegations; the Title VII and DCHRA claims of plaintiff Rogers; and the DCHRA claims of plaintiff Quarles. It is further

**ORDERED** that plaintiff shall file a motion for class certification by May 30, 2003; defendants' opposition, if any, must be

filed by June 27, 2003; and plaintiffs' reply, if any, must be filed by July 11,2003.[1] It is further

**ORDERED** that defendants' Motion to Dismiss Title VII Claims for Lack of Venue [# 7] is denied in part and deferred in part; the motion is denied regarding the claims of plaintiff Quarles and is deferred regarding the claims of plaintiffs Thomas, Rogers, and Bellamy. It is further

**ORDERED** that defendants' Motion to Dismiss Counts I, II, V and VI Relating to Title VII Claims [# 6] of plaintiff Quarles is denied and a ruling on whether plaintiffs Thomas', Rogers' and Bellamy's Title VII claims will be either dismissed or transferred will be deferred until a ruling on the plaintiffs' class certification request is rendered. It is further

**ORDERED** that a ruling on defendants' Motion to Dismiss Claims Based on District of Columbia Human Rights Act [# 8] is deferred; a decision on this motion will be issued after the parties file supplemental pleadings addressing the issues raised in the Court's Memorandum Opinion.[2] It is further

**ORDERED** that a further status conference shall be held on September 19, 2003, at 9:00 a.m.

---

1. These are also the dates by which the parties must file any pleadings regarding plaintiffs' motion to amend the complaint, if such a motion is filed.

2. The same dates by which the parties must file any pleadings regarding plaintiffs' motion to amend the complaint apply to the filing of these supplemental pleadings.